No. 24-10470

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; TEXAS DEPARTMENT OF TRANSPORTATION,
*Plaintiffs-Appellees,*

*v.*

U.S. DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY ADMINISTRATION; SHAILEN BHATT, IN HIS OFFICIAL CAPACITY, AS ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION; PETE BUTTIGIEG, IN HIS OFFICIAL CAPACITY, AS SECRETARY OF TRANSPORTATION
*Defendants-Appellants.*

On Appeal from the United States District Court for
the Northern District of Texas, Lubbock Division

**BRIEF OF *AMICI CURIAE***
**AMERICAN ROAD AND TRANSPORTATION**
**BUILDERS ASSOCIATION AND ASSOCIATED**
**GENERAL CONTRACTORS OF AMERICA, INC.**
**IN SUPPORT OF PLAINTIFFS-APPELLEES**

John A. Sheehan
Karen Bennett
Jeffrey S. Longsworth
EARTH & WATER LAW
1455 Pennsylvania Ave, NW,
Suite 400
Washington, DC 20004
(301)980-5032
John.sheehan@earthandwatergroup.com
*Counsel for Amici*

Of Counsel:
Prianka P. Sharma
For the American Road & Transportation
Builders Association

Leah Pilconis
For the Associated General Contractors
of America, Inc.

## <u>SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS</u>
No. 24-10470

State of Texas; Texas Department of Transportation,

*Plaintiffs-Appellees,*

v.

U.S. Department of Transportation, et al.,

*Defendants-Appellants.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

<u>List of Persons or Entities Financially Interested in the Outcome of the Litigation</u>

- The Associated General Contractors of America, Inc. (AGC)  the nation's largest and most diverse trade association in the commercial construction industry, now representing more than 28,000 member companies that include general contractors, specialty contractors, and service providers and suppliers to the industry through a nationwide network of chapters in all 50 states, the District of Columbia, and Puerto Rico. AGC is registered as a 501(c)(6) organization. AGC has no parent corporation, but it does have two subsidiary corporations, Project Modeling, LLC and ConsensusDocs, LLC. No publicly traded company owns 10% or more of AGC or 10% or more of AGC's subsidiaries.

- The American Road & Transportation Builders Association (ARTBA) is registered as a 501(c)(6) organization and has no parent corporation. No publicly traded company owns 10% or more of ARTBA. ARTBA is made up of more than 8,000 member organizations in the transportation construction industry, including construction contractors, professional engineering firms,

public agencies, state and local transportation administrators, heavy equipment manufacturers, and materials suppliers.

List of Opposing Law Firms and/or Counsel in the Case

- Counsel of Record are listed on the docket in this case and counsel for AGC and ARTBA are not aware of any additional counsel.

- Counsel for AGC and ARTBA are not aware of any other interested persons as set forth in Fifth Circuit Rule 28.2.1.

- Counsel for AGC and ARTBA are John Sheehan, Jeffery Longsworth and Karen Bennett of Earth & Water Law, LLC.

Date:  November 18, 2024.                    Respectfully submitted,


                                             /s/ *John A. Sheehan*
                                             John A. Sheehan

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................................... iv

TABLE OF AUTHORITIES ................................................................................ vi

STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE .............1

SUMMARY OF THE ARGUMENT ......................................................................4

ARGUMENT ..........................................................................................................7

I.    THE STATUTE IS CLEAR THAT THE STATES SET TARGETS ............8

II.   FHWA LACKS CLEAR CONGRESSIONAL AUTHORIZATION...........10

III.  FHWA'S EMISSIONS RULE VIOLATED THE MAJOR QUESTIONS
DOCTRINE ...................................................................................................11

   A.   Regulation of GHG is a Matter of Vast Economic and Political Importance
        11

IV.  THE FHWA's RELIANCE ON THE ADMINISTRATION'S CLIMATE
POLICY GOALS IS ARBITRARY AND CAPRICIOUS. .................................13

   A.   Reliance on The President's Executive Orders in the absence of
        Congressional delegation violated the Administrative Procedure Act.............13

   B.   State DOTs and MPOs Cannot Affect GHG Impacts................................15

V.    VACATUR IS PROPER. .............................................................................15

CONCLUSION .....................................................................................................17

CERTIFICATE OF SERVICE .............................................................................18

CERTIFICATE OF COMPLIANCE ....................................................................19

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the Associated General Contractors of America, Inc. (AGC) states that its general nature and purpose is to operate as the nation's largest and most diverse trade association in the commercial construction industry, now representing more than 28,000 member companies that include general contractors, specialty contractors, and service providers and suppliers to the industry through a nationwide network of chapters in all 50 states, the District of Columbia, and Puerto Rico. AGC members are engaged in building, heavy, civil, industrial, utility, and other construction for both public and private property owners and developers. AGC works to ensure the continued success of the commercial construction industry by advocating for federal, state, and local measures that support the industry; providing education and training for member firms; and connecting member firms with resources needed to be successful businesses and responsible corporate citizens. AGC represents the interest of its members in matters before Congress, the Executive Branch and the courts.

AGC states that it is registered as a 501(c)(6) organization. AGC has no parent corporation, but it does have two subsidiary corporations, Project Modeling, LLC and ConsensusDocs, LLC. No publicly traded company owns 10% or more of AGC or 10% or more of AGC's subsidiaries.

The American Road & Transportation Builders Association (ARTBA) is registered as a 501(c)(6) organization and has no parent corporation. No publicly traded company owns 10% or more of ARTBA. ARTBA is made up of more than 8,000 member organizations in the transportation construction industry, including construction contractors, professional engineering firms, public agencies, state and local transportation administrators, heavy equipment manufacturers, and materials suppliers.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Mining Cong. V. U.S. Army Corps of Eng'rs*,
    962 F. Supp. 2 (D.D.C.1997) ...............................................................16

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...........................................................................16

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ...........................................................................13

*Kentucky v. FHWA*,
    No. 5:23-cv-162-BJB, 2024 U.S. Dist. LEXIS 59960 (W.D. KY
    Apr. 1, 2024), *appeal pending* No. 24-5532 (6th Cir.) ....................................4, 7

*Loper Bright Enters. v. Raimondo*,
    144 S.Ct. 2244 (2024) .......................................................................5, 10

*Texas v. DOT*,
    No. 5:23-CV-304-H, 2024 WL 1337375 (N.D. Tex. Mar. 27,
    2024), *appeal pending* No. 24-10470 (5th Cir.) .........................................*passim*

*West Virginia v. EPA*,
    597 U.S. 697 (2022) .............................................................................6

*West Virginia v. EPA*,
    597 U.S.720 (2022) ........................................................................11, 13

*West Virginia v. EPA*,
    597 U.S.722-723 (2022) ....................................................................6, 13

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ...........................................................................14

**Statutes**

5 U.S.C. § 706(2)(A) .............................................................................13, 16, 17

23 U.S.C. § 150 .......................................................................................3, 4

2021 Infrastructure Investment and Jobs Act .........................................................2

Administrative Procedure Act.................................................................7, 16

Clean Air Act § 109, 42 U.S.C. § 7409 (2021) .......................................4

**Other Authorities**

88 Fed. Reg. 85364, 85365 ...................................................................8, 14

88 Fed. Reg. 85364, 85368 (Dec. 7, 2023).........................................5, 10

88 Fed. Reg. 85369 ..................................................................................14

Comments of the Am. Rd. & Transp. Builders Ass'n and the
    Associated Gen. Contractors of Am., Inc., available at:
    https://www.regulations.gov/docket/FHWA-2021-0004-0001(last
    visited Oct. 7, 2024)..............................................................3, 8, 11, 13

Infrastructure Investment and Jobs Act Analysis & Timeline of
    ARTBA Leadership on the Road to Reauthorization, available at:
    www.artba.org/wp-content/uploads/2023/10/IIJA_Publication-
    1.pdf ....................................................................................................2

Executive Order 14008 ............................................................................14

Executive Order 13990 ............................................................................14

White House, *President Biden's Actions to Tackle the Climate Crisis*,
    https://www.whitehouse.gov/climate (last visited Oct. 6, 2024).......12

**STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE** [1]

The *Amici Curiae* are two national construction trade associations, whose memberships include key business and governmental agencies in the construction and transportation sectors.[2]  These members are directly impacted by federal infrastructure policy.  Amici have moved to file a brief in this case both because the Federal Highway Administration (FHWA) rule at issue is not supported by statutory authority and because the rule would inappropriately prioritize the reduction of on-road greenhouse gas (GHG) tailpipe emissions, inherently reducing priority for the safety and resilience of federal highway infrastructure. The FHWA Emissions Rule would have far-reaching consequences, particularly regarding highway funding decisions and compliance costs. Amici are concerned that the Emissions Rule will divert critical highway funding away from projects to enhance the physical and structural resilience of the highway system that are consistent with Congressional intent, thereby jeopardizing the safety and durability of national transportation networks.

The American Road & Transportation Builders Association (ARTBA) is made up of more than 8,000 member organizations in the transportation

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(i)-(iii) amici state that no part of this brief was authored by counsel for any party, and no person or entity other than Amici made any monetary contribution to the preparation and submission of the brief.

[2] Pursuant to Fed. R. App. P. 29(a)(2), amici state that Appellants and Appellees have consented to the filing of this brief.

construction industry, including construction contractors, professional engineering firms, public agencies, state and local transportation administrators, heavy equipment manufacturers, and materials suppliers. The transportation construction industry generates more than $500 billion annually in U.S. economic activity. ARTBA's members are responsible for the design and construction of vital public infrastructure projects such as highways, bridges, airports, railroads, and mass transit facilities, for which the Infrastructure Investment and Jobs Act (IIJA) is providing substantial investment.[3]  ARTBA's membership includes state and local transportation agencies directly responsible for planning and funding highway projects. As such, ARTBA's members are directly impacted by the greenhouse gas performance measures in the Emissions Rule.

The Associated General Contractors of America, Inc. (AGC) is the nation's largest and most diverse trade association in the commercial construction industry, now representing more than 28,000 member companies, which include general contractors, specialty contractors, and service providers and suppliers to the industry through a nationwide network of chapters in all 50 states, the District of Columbia, and Puerto Rico.  AGC represents both union- and open-shop

---

[3] The 2021 Infrastructure Investment and Jobs Act provided $450 billion in funding for highway, bridge, public transportation, and safety improvements, roads, bridges, and other transportation infrastructure. Infrastructure Investment and Jobs Act Analysis & Timeline of ARTBA Leadership on the Road to Reauthorization, available at: www.artba.org/wp-content/uploads/2023/10/IIJA_Publication-1.pdf (last visited Nov. 7, 2024).

employers engaged in building, heavy, civil, industrial, utility, and other construction for both public and private property owners and developers. AGC members regularly bid for contracts with and perform work for state departments of transportation to build roads, bridges, and other transportation infrastructure. AGC works to ensure the continued success of the construction industry by advocating for federal, state, and local measures that support the industry and by connecting member firms with the resources and individuals they need to be successful businesses and corporate citizens.

Amici and their members have a direct and substantial interest in this case.[4] The FHWA's actions in the Emissions Rule impose executive branch priorities in lieu of clear legislative direction from Congress that reserved authority to the states to set their own performance targets.[5]  The universal mandating of GHG performance measures in transportation improvement projects for carbon dioxide ($CO_2$) emissions[6] from the vehicles that drive on our nation's roadways will divert resources in many states from existing priorities to maintain and enhance highway and bridge conditions, performance, safety, connectivity, and efficiency, all core missions specified by Congress.[7]   The FHWA's attempt to add such GHG

---

[4] *See* Comments of the Am. Rd. & Transp. Builders Ass'n and the Associated Gen. Contractors of Am., Inc., available at: https://www.regulations.gov/docket/FHWA-2021-0004-0001(last visited Oct. 7, 2024).
[5] 23 U.S.C. § 150(d).
[6] In this FHWA rule, GHG is defined solely as $CO_2$.
[7] *See* Associated Gen. Contractors of Am., Inc. Comments at pg. 2.

performance standards also complicates states' compliance efforts regarding their separate responsibilities to meet federal National Ambient Air Quality Standards (NAAQS).[8]  In numerous states, integrating GHG requirements into an already complex process of uniting air quality planning and critically important transportation infrastructure decisions ultimately will hamper the state department of transportation's efforts to maintain and improve a safe and resilient system of highways and bridges, in which they partner with their state's transportation construction industry.

## SUMMARY OF THE ARGUMENT

Two federal district courts have already concluded that the Emissions Rule -- which mandates state departments of transportation measure and set targets to achieve declining GHG emissions from vehicle tailpipes -- is invalid because Congress did not provide statutory authority for mandates created in the rule.[9] Congress's intent in promulgating 23 U.S.C. § 150 was clear: performance measures are designed to focus on the physical and structural resilience of infrastructure, without reference to tracking transportation-related GHG. By mandating GHG reporting and target-setting requirements beyond the scope of

---

[8] *See* Clean Air Act § 109, 42 U.S.C. § 7409 (2021).
[9] *Kentucky v. FHWA*, No. 5:23-cv-162-BJB, 2024 U.S. Dist. LEXIS 59960 (W.D. KY Apr. 1, 2024), *appeal pending* No. 24-5532 (6th Cir.); *Texas v. DOT*, No. 5:23-CV-304-H, 2024 WL 1337375 (N.D. Tex. Mar. 27, 2024), *appeal pending* No. 24-10470 (5th Cir.).

congressional authorization, the Emissions Rule imposes environmental objectives never passed into law by Congress, rendering the rule invalid.

As the State of Texas and the Texas Department of Transportation (collectively "Texas") explains in its response brief, Congress never authorized FHWA to create $CO_2$-driven performance measures for vehicles that drive on national highways[10] and nothing in the text, structure, or context supports FHWA's view that "performance" includes the emissions of vehicles on national highways.[11]

FHWA attempted but failed to overcome the lack of a clear congressional mandate by asserting that "no provision of law prohibits FHWA from adopting a GHG measure, despite ample opportunity for Congress to do so."[12]  The lack of a prohibition on regulating GHG does not amount to an authorization to do so and the agency's interpretation deserves no deference by this Court.  In *Loper Bright Enterprises v Raimondo*, the Supreme Court established that "like agency interpretations of the Constitution are *not* entitled to deference, under the APA, it thus remains the responsibility of the court to decide whether the law means what the agency says."[13] The lower court correctly undertook an independent analysis of

---

[10] Appellee Brief at 16.
[11] *Id.* at 12.
[12] Defendant-Appellant Opening Brief at 18, fn5; 88 Fed. Reg. 85364, 85368 (Dec. 7, 2023).
[13] *Loper Bright Enters. v. Raimondo*, 144 S.Ct. 2244 (2024) (citing *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgement.).

the statutory language and decided to vacate the Emissions Rule for a lack of statutory authority.

The rule also violates the major questions doctrine established in *West Virginia v. EPA*.[14]  In that case, the Supreme Court clarified that an agency must point to clear congressional authorization when an agency asserts the power to regulate "a significant portion of the American economy."[15] The Emissions Rule attempts to transform the FHWA into a regulator of certain GHG emissions, a matter with vast economic impacts and the subject of national debate, and it does so without congressional authorization, and fails to meet the standards set forth in *West Virginia v. EPA*.  As such, the lower court's decision should be upheld because that court conducted a thorough statutory analysis to correctly find that the FHWA lacked any statutory authority to regulate GHG emissions through the federal highway program.

FHWA's reliance on executive orders to fundamentally change the federal-state balance Congress established in administering the federal highway program is arbitrary and capricious.  The Emissions Rule interferes with the states' primary authority to make decisions to maintain and improve transportation infrastructure assets based on their unique circumstances, while considering other

---

[14] *West Virginia v. EPA*, 597 U.S. 697, 722 (2022).
[15] *Id.*

factors such as economic, environmental, population growth, safety concerns, and state constitutional restrictions on the use of highway funds. Instead, the FHWA's Emissions Rule would transform these state agencies into regulators of GHG emissions from vehicles that travel in and across their states, a role Congress never intended or authorized. As a result, amici's members, including some state departments of transportation, are impacted and significant resources that should be dedicated to the purposes and goals of the federal highway program will be diverted to FHWA's unauthorized GHG program.

Amici agree with Texas that while the lower court did not address Texas's arbitrary and capricious assertions – because it ended its analysis after finding that there was no statutory authority for the rulemaking to begin with – this Court could find the 2023 Rule also is arbitrary and capricious under the Administrative Procedure Act.[16]

## ARGUMENT

Texas aptly demonstrates that no federal law authorizes the FHWA's Emissions Rule.[17] Amici, national construction trade associations, submit this brief to explain to this Court the negative impacts the Emissions Rule would have on the state highway programs that amici's members help to build, maintain, and

---

[16] *Kentucky v. FHWA*, No. 5:23-cv-162-BJB, 2024 U.S. Dist. LEXIS 59960 (W.D. KY Apr. 1, 2024), *appeal pending* No. 24-5532 (6th Cir.); *Texas v. DOT*, No. 5:23-CV-304-H, 2024 WL 1337375 (N.D. Tex. Mar. 27, 2024), *appeal pending* No. 24-10470 (5th Cir.).
[17] Texas Appellee brief.

7

improve, all of which could be negatively impacted if this Court decides not to affirm the lower court's decision.

## I.    THE STATUTE IS CLEAR THAT THE STATES SET TARGETS

The Emissions Rule requires state departments of transportation and metropolitan planning organizations (MPOs) to establish GHG emission targets and methods for measuring transportation sector emissions, including a requirement that such targets decrease over time.[18]  The FHWA asserts that its authority for these mandates falls under the National Highway Performance Program (NHPP).

Amici recognize that all states do not agree on any one approach to addressing and mitigating climate change impacts and that some state DOTs have developed GHG performance measures, incorporating them into existing state planning and budgets, as the states are free to do.  However, the American Association of State Highway and Transportation Officials (AASHTO), the national association for state DOTs, in comments to the FHWA, stated "AASHTO disagrees with the asserted justification provided in the NPRM regarding the legal authority for the FHWA to establish a GHG emissions performance measure."[19]  In

---

[18] *See* 88 Fed. Reg. 85364, 85365 (State DOTs and MPOs have the flexibility to set targets that work for their respective climate change policies and other policy priorities, so long as they are declining.).

[19] *See* Comments of the Am. Ass'n of State Highway & Transp. Officials, at 5, FHWA-2021-0004 (July 12, 2021), https://www.regulations.gov/comments/FHWA-2021-0004.

our federal system, Congress neither authorized the FHWA to mandate GHG performance measures nor did it prohibit states from developing such programs as some states so desire.

As set forth by Texas in its response brief, "Judge Hendrix addressed each aspect of the interpretive question here and concluded that Congress 'indicate[d] at every turn that measuring the performance of … the [NHS] does not authorize measures of environmental performance, much less the environmental performance of vehicles that merely happen to sometimes use the NHS.' "[20] Instead, Congress "instructed that it is the roadways' efficiency and reliability in facilitating travel, commerce, and the national defense that may be measured."[21]  The district court's comprehensive statutory analysis correctly determined that Congress expressly limited the permissible performance measures to only those specifically enumerated in the statute.[22]  Further, the Court explained that "Congress provided a clearly delineated and expressly limited grant of authority to the DOT in establishing performance measures, and the Court must be faithful to that limitation."[23] Texas's  request that this Court affirm the district court's ruling based on a lack of statutory authorization for the Emissions Rule is based on a proper

---

[20] Appellee's Br. At 19.
[21] Id.
[22] *Texas*, 2024 WL 1337375, at 18.
[23] *Id.* (citing *Biden v. Nebraska*, 143 S.Ct. 2355, 2368-71 (2023) interpreting a limiting provision to require a strict reading of a statute's authorization).

construction of the law.

## II.    FHWA LACKS CLEAR CONGRESSIONAL AUTHORIZATION

The FHWA conceded it has *no direct congressional authorization* to regulate GHG emissions ("no provision of law prohibits FHWA from adopting a GHG measure, despite ample opportunity for Congress to do so.").[24]  The lack of a prohibition on regulating GHG does not amount to an authorization to do so. FHWA argues that lacking a prohibition on adopting a GHG measure, this Court should defer to the agency's interpretation of the regulation.  The Supreme Court has recently overruled blind deference to an agency's interpretation, curtailing the Executive Branch's power to expansively interpret its own authority.[25]  In *Loper Bright*, the Court was asked to limit executive overreach and the Court responded by cautioning courts that they must ensure "that the agency acts within" that authority" and "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."[26]  The lower court appropriately conducted an independent analysis of FHWA's authority and rightfully rejected the agency's assertion of authority based on the explanation that there is no prohibition on adopting a GHG limit.

---

[24] Defendant-Appellant Opening Brief at 18, fn5; 88 Fed. Reg. 85364, 85368 (Dec. 7, 2023).
[25] Brief of Amici Curiae U.S. Senators and U.S. Representatives in Support of the State Appellees in the U.S. Court of Appeals for the Sixth Circuit at 26 (citing *Loper Bright*, 144 S. Ct. 2244 (2024)).
[26] *Id.* referencing *Loper Bright* at 2273; *See* also id. at 2261.

Even more, an admission that the Executive Branch is mandating what Congress had ample opportunity to promulgate and chose not to[27] is exactly what the Supreme Court's clear statement rule as expressed in *West Virginia v. EPA* is designed to prevent.[28] FHWA's regulation substantially changes the federal-state balance Congress established in administering the federal highway program, transforming these state agencies into regulators of GHG while admitting it has no clear congressional direction to do so.

## III.   FHWA'S EMISSIONS RULE VIOLATED THE MAJOR QUESTIONS DOCTRINE

### A. Regulation of GHG is a Matter of Vast Economic and Political Importance

In *West Virginia v. EPA*, the Supreme Court emphasized that agencies cannot act on issues of major national importance without explicit and specific congressional authorization.[29] There is no question the Emissions Rule is a matter of vast economic and political importance. According to the state transportation agencies themselves, "the rule has potential to impact a state DOT's overall federal program, including the selection of projects and require extensive changes to the transportation system to achieve."[30]  These projects are the types of projects that

---

[27] Id. at 11-14 (Explaining final version of the Infrastructure Act withheld authority to issue a GHG performance measure regulation.)
[28] *West Virginia v. EPA,* 597 U.S. at 720.
[29] *Id.*
[30] *See* Comments of the Am. Ass'n of State Highway & Transp. Officials, at 5.

amici's members help to complete.

The Emissions Rule imposes significant new financial and administrative burdens on many states, requiring them to undertake extensive data collection, analysis, and report decreased GHG emissions.[31]  If the Emissions Rule is allowed to stand, states will be discouraged from making investments that will achieve the statutory goals and purposes of the highway program and improved infrastructure because they would be forced to pursue GHG reductions from vehicles that use those highways.

The FHWA's Emissions Rule transforms Congress' authorization of federal transportation spending on the NHS, defined as a series of roads, into the regulation of emissions from the vehicles that travel on those roads.  Here, the U.S. Department of Transportation (USDOT) has repurposed the FHWA to further the Biden Administration's climate agenda, reaching "net zero" GHG emissions across the entire economy of the United States by 2050, instead of adhering to or obtaining appropriate congressional authorization.[32]  While the Biden Administration has prioritized policies to address climate change, doing so through

---

[31] State departments of transportation (DOTs) assert that the estimated regulatory costs of the rule are drastically underestimated, and the cost to plan and construct the necessary infrastructure would far exceed current spending authorities. *Id.* at 14-15.
[32] The White House, *President Biden's Actions to Tackle the Climate Crisis*, https://www.whitehouse.gov/climate (last visited Oct. 6, 2024).

the Emissions Rule is beyond the FHWA's jurisdiction and authority.[33]  This rule

directly impacts state infrastructure projects, industries related to transportation,

and the broader economy, making it a question of vast significance but not one

Congress directed or even authorized FHWA to address through the Emissions

Rule.[34]  This is just the type of expansion of executive power over areas not

otherwise authorized by Congress that the Supreme Court has prohibited.[35]

## IV.    THE FHWA's RELIANCE ON THE ADMINISTRATION'S CLIMATE POLICY GOALS IS ARBITRARY AND CAPRICIOUS.

### A. Reliance on The President's Executive Orders in the absence of Congressional delegation violated the Administrative Procedure Act.

Courts must vacate agency rulemakings when such actions are arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law.  5

U.S.C. § 706(2)(A).  As Texas appropriately pointed out, this case challenges the

USDOT and the FHWA's expansive, virtually limitless interpretation of a statute

that set forth very precise and limited regulatory authority—as a launching pad for

advancing the President's climate goals.[36]  The Emissions Rule is clear that the

---

[33] The American Association of State Highway and Transportation Officials (AASHTO) warned of the limited ability of state DOTs to affect GHG emissions. *See* Comments of the Am. Ass'n of State Highway & Transp. Officials, at 13, FHWA-2021-0004 (2021), https://www.regulations.gov/docket/FHWA-2021-0004 (last visited Nov. 8, 2024).
[34] *West Virginia v. EPA,* 597 U.S. at 722–23.
[35] *West Virginia v. EPA,* 597 U.S. at 720*; See also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000) ("We are confident that Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion.").
[36] Appellee brief at 20.

intent of the GHG measure is to "align with Executive Orders … and supports the U.S. target of reducing GHG emissions 50-52 percent below 2005 levels in 2030, on course to reaching net-zero emissions economywide no later than 2050."[37]  The FHWA explained that the rule "responds to the direction in Executive Order 13990 that federal agencies review any regulations … and, take steps to address any such actions that conflict with the Administration's national objectives on climate change."[38] And, the FHWA stated that "establishing declining targets will help state DOTs and MPOs plan toward reductions in GHG emissions and make federal infrastructure investment decisions that reduce climate pollution, a principle set forth in E.O. 14008."[39] The FHWA's reliance on non-binding Executive Orders is insufficient authority to promulgate the Emissions Rule.[40] The agency's admission, that there is no prohibition on proceeding with a rulemaking that directly conflicts with Congressional limitations on the agency expressed in the underlying statute, twists the need for congressional authorization into the ability to regulate based on the lack of a congressional prohibition.  Such actions are arbitrary and capricious and not otherwise in accordance with the law.

    And while the lower court here did not address violations of the APA

---

[37] 88 Fed. Reg. 85364, 85365.
[38] *Id*.
[39] 88 Fed. Reg. 85369.
[40] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) ("The President's power, if any, to issue an order must stem either from an act of Congress or from the United States Constitution itself.").

because its comprehensive statutory analysis was outcome determinative, a different federal court, in response to a challenge by twenty-one Attorneys General to this same Emissions Rule, found that FHWA's rulemaking violated the APA.[41]

### B. State DOTs and MPOs Cannot Affect GHG Impacts

The FHWA's assertion that the Emissions Rule will drive reductions in on-road emissions is flawed and cannot justify the substantial regulatory burdens associated with it. The district court found that the agency failed to explain how a non-binding target would achieve the agency's goal of decreased GHG emissions.[42] State DOTs have rightly pointed out that the kinds of changes required to reduce GHG tailpipe emissions extend far beyond the control of these state agencies alone. For example, the Emissions Rule requires the states to focus their GHG emissions efforts on the NHS, roads that carry significant interstate traffic. However, state DOTs have no ability to control GHG tailpipe emissions from vehicles traveling through and across their states. For these reasons, the Emissions Rule violates the APA.

### V.    VACATUR IS PROPER.

Vacatur—the judicial invalidation of a rule— is the proper remedy in this

---

[41] Texas-Appellee Brief at 42-43.
[42] *Texas*, 2024 WL 1337375, *at 18.*

case because it ensures that the unlawful Emissions Rule is nullified entirely, preventing further unauthorized imposition on the states and preserving the constitutional balance between federal and state powers.  The Supreme Court has consistently recognized vacatur as the appropriate remedy when a regulation is found to be unconstitutional or beyond an agency's statutory authority. In *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 536 (2009), the Supreme Court held that regulations exceeding an agency's statutory mandate must be invalidated: "The Administrative Procedure Act separately provides for setting aside agency action that is 'unlawful,' 5 U.S.C. § 706(2)(A)."

APA Section 706(2) directs courts to "hold unlawful and set aside agency action, findings, and conclusions found" to violate clauses A through F of that section.  The lower court here found that the Emissions Rule was not authorized by statute and the lower court in Kentucky found that same rule to be arbitrary and capricious.  The "ordinary result" when a court finds an agency's rule unlawful is to vacate that rule, not just with respect to the plaintiffs in the case but with respect to all parties. [43]

Twenty-two states have successfully challenged the Emissions Rule and the trade

---

[43] *See Texas v. United States*, 50 F.4th 498, 529, 2022 U.S. WL 5135501 ( (finding the district court was well within its discretion to order vacatur, citing Am.. Bankers Ass'n v. Nat'l Credit Union Ass'n, 934 F,.3d 649, 673, 443 U.S. App. D.C. 116 (D.C. Cir. 2019) quoting United Steel v. Mine Safety & Health Admin., 925 F.3d 1279, 1287, 441 U.D. App. D.C. 212 (D.C. Cir. 2019) ("When a rule is contrary to law, the 'ordinary practice is to vacate' it."); *see also Am. Mining Cong. V. U.S. Army Corps of Eng'rs*, 962 F. Supp. 2, 4 (D.D.C.1997).

association for other state DOTs also objects to making the GHG reductions a mandatory program by the FHWA. This indicates that at least some states themselves feel the federal government does not — and should not — have authority to mandate this program, leaving it instead to individual states to decide.

Vacating the rule nationwide, as courts have often done with unlawful agency actions under APA Section 706(2), would avoid a patchwork legal and regulatory framework and level the federal regulatory playing field while still allowing states that wish to pursue such measures the flexibility to do so. Given that the rule is unauthorized to begin with, it makes little sense to force compliance upon some states while allowing others to opt out, as the rule is fundamentally invalid. Simply put, an invalid rule should not be partially enforced. National vacatur, therefore, is the appropriate outcome and should be affirmed by this Court.

## CONCLUSION

For the reasons set forth above, the Court should affirm the district court's judgment in its entirety.

Respectfully submitted,

November 18, 2024

*/s/ John A. Sheehan*       
JOHN A. SHEEHAN

PRIANKA P. SHARMA
AMERICAN ROAD &
TRANSPORTATION BUILDERS
ASSOCIATION
250 E. Street, SW
Suite 900
Washington, DC 20024
*Counsel for Amicus Curiae the American
Road & Transportation Builders
Association*
psharma@artba.org

JOHN A. SHEEHAN*
JEFFREY LONGSWORTH
KAREN BENNETT
EARTH AND WATER LAW
1455 Pennsylvania Ave, N.W.
Suite 400
EARTH & WATER LAW LLC
Washington, D.C.  20001
*Counsel of Record*
john.sheehan@earthandwatergroup.com

LEAH PILCONIS
ASSOCIATED GENERAL
CONTRACTORS OF AMERICA, INC.
2300 Wilson Blvd.,         Suite. 300
Arlington, VA 22201
*Counsel for Amicus Curiae the Associated
General Contractors of America, Inc.*
Leah.pilconis@agc.org

## CERTIFICATE OF SERVICE

I certify that on November 18, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

*/s/ John A. Sheehan*
JOHN A. SHEEHAN

**CERTIFICATE OF COMPLIANCE**

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,905 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program sued to calculate the word count).

Dated: November 18, 2024                    */s/ John A. Sheehan*
                                            JOHN A. SHEEHAN