No. 24-10470

_____

# In the United States Court of Appeals
# For the Fifth Circuit

_____

STATE OF TEXAS; TEXAS DEPARTMENT OF TRANSPORTATION,

*Plaintiffs–Appellees,*

**v.**

U.S. DEPARTMENT OF TRANSPORTATION, ET AL.,

*Defendants–Appellants.*

_____

On Appeal from the United States District Court for the Northern District of Texas, 5:23-cv-00304

_____

## BRIEF OF *AMICUS CURIAE* CENTER FOR ENVIRONMENTAL ACCOUNTABILITY IN SUPPORT OF PLAINTIFFS-APPELLEES

_____

Michael Buschbacher
  *Counsel of Record*
James R. Conde
Nicholas A. Cordova
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, DC 20006
202-955-0620
mbuschbacher@boydengray.com

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS
No. 24-10470

STATE OF TEXAS; TEXAS DEPARTMENT OF TRANSPORTATION,

*Plaintiffs–Appellees*,

v.

U.S. DEPARTMENT OF TRANSPORTATION, ET AL.,

*Defendants–Appellants.*

———————————————————

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Center for Environmental Accountability

   *Amicus Curiae*

2. Michael Buschbacher
   James R. Conde
   Nicholas A. Cordova

   Counsel for *Amicus Curiae* Center for Environmental Accountability

Further, pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that *amicus* Center for

Environmental Accountability is a nonprofit corporation that has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

Dated: November 9, 2024                    Respectfully Submitted,

                                           /s/ Michael Buschbacher
                                           *Attorney of Record for amicus*
                                           *Center for Environmental Accountability*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... v

INTEREST OF *AMICUS CURIAE* ........................................................ viii

INTRODUCTION ................................................................................. 1

LEGAL BACKGROUND .......................................................................... 6

ARGUMENT ......................................................................................... 7

    I.    The Rule Decides a Major Question That Congress Has Not Delegated to Any Federal Agency, Including FHWA ...... 8

    II.    The Rule is Arbitrary and Capricious ................................... 10

        A.    FHWA Overlooked Important Aspects of the Problem ........................................................................ 11

        B.    FHWA Offers No Plausible Explanation of How the Rule Will Improve the "Performance" of Federal Highways ................................................................... 15

    III.    Vacatur is the Proper Remedy ............................................ 17

CONCLUSION ...................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*FCC v. Prometheus Radio Project,*
592 U.S. 414 (2021) ................................................................... 10

*FDA v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000) ..................................................................... 9

*Kentucky v. EPA,*
No. 24-1087 (D.C. Cir.) ................................................................ 9

*Kentucky v. FHWA,*
No. 5:23-cv-162, 2024 WL 1402443 (W.D. Ky. Apr. 1,
2024) .......................................................................................... 5

*Massachusetts v. EPA,*
549 U.S. 497 (2007) ..................................................................... 9

*Michigan v. EPA,*
576 U.S. 743 (2015) ............................................................... 13, 16

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.
Auto. Ins. Co.,* 463 U.S. 29 (1983) ........................................ 10, 11

*In re NHTSA, DOT, Corporate Average Fuel Economy
Standards,* No. 24-7001 (6th Cir. July 18, 2024) ......................... 9

*Stoner v. Santa Clara Cnty. Off. of Educ.,*
502 F.3d 1116 (9th Cir. 2007) ....................................................... 5

*Texas v. U.S. Dep't of Transp.,*
No. 5:23-cv-304, 2024 WL 1337375 (N.D. Tex. Mar. 27,
2024) .......................................................................................... 6

*West Virginia State Bd. of Educ. v. Barnette,*
319 U.S. 624 (1943) ..................................................................... 5

*West Virginia v. EPA*,
   597 U.S. 697 (2022) ............................................................... 8

**Statutes**

5 U.S.C. § 706(2)(A) ............................................................... 10

5 U.S.C. §§ 801–08 ............................................................... 10

23 U.S.C. § 150 ..................................................................... 7

23 U.S.C. § 150(c)(3)(A)(ii)(V) ............................................. 6

42 U.S.C. § 7507 ................................................................... 3

42 U.S.C. § 7543(a) .............................................................. 3

42 U.S.C. § 7543(b) .............................................................. 3

49 U.S.C. § 32902(h) ............................................................ 9

**Other Authorities**

23 C.F.R. § 490.507(b) .......................................................... 7

23 C.F.R. § 490.511(c) .......................................................... 7

84 Fed. Reg. 51,310 (Sept. 27, 2019) ................................... 4

87 Fed. Reg. 14,332 (Mar. 14, 2022) .................................... 4

87 Fed. Reg. 42,401 (July 15, 2022) ........................... 2, 3, 4, 7

88 Fed. Reg. 85,364 (Dec. 7, 2023) ......... 1, 4, 6, 7, 11, 12, 13, 14, 15

Cal. Code Regs. tit. 13, § 1962.2 ........................................... 3

Cal. Code Regs. tit. 13, § 1962.4 ........................................... 3

Cal. Code Regs. tit. 13, § 2014.1 ........................................... 3

Cal. Code Regs. tit. 13, § 2015.1 ........................................... 3

Cal. Code Regs. tit. 13, § 2015.2 ................................................ 3

Cal. Code Regs. tit. 13, § 2016 .................................................. 3

Comment of Boyden Gray & Associates PLLC
    (Oct. 13, 2022), Doc. ID No. FHWA-2021-0004-39816 ............... 11, 14

EIA, *Outlook for Future Emissions* (updated Oct. 27, 2023) ........... 15, 16

Exec. Order No. 14,037, 86 Fed. Reg. 43,583 (Aug. 10, 2021) .................. 1

FHWA, Doc. ID No. FHWA-2021-0004-39830,
    Final Regulatory Impact Analysis (Sept. 2023) ....................... 4, 13, 16

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va.
    L. Rev. 933 (2018) .................................................... 17

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L.
    Rev. 1121 (2020) ..................................................... 17

S.J. Res. 61, 118th Congress (Apr. 10, 2024) ........................... 10

T. Elliot Gaiser, Mathura Sridharan, and
    Nicholas A. Cordova, *The Truth of Erasure: Universal
    Remedies for Universal Agency Actions*, U. Chi. L. Rev.
    Online (Aug. 28, 2024) ............................................... 18

## INTEREST OF *AMICUS CURIAE*[1]

The Center for Environmental Accountability ("CEA") is a non-profit organization dedicated to promoting transparency and accountability in environmental and energy policy. Our unofficial motto is that "the rule of law is the best environmental policy." This ensures that we have sound decisionmaking that takes account of public input and protects the environment with minimal disruption to daily life.

The regulations challenged here are a paradigmatic example of what happens when an agency abandons its legal restraints. The Federal Highway Administration has no authority to require state departments of transportation to decarbonize the cars and trucks that travel on their roads, nor will requiring this do anything to prevent climate change. The agency's attempt to pressure States to "align" with the Biden-Harris Administration's climate goals through a mandatory planning and reporting program is hence both unlawful and irrational. CEA submits this brief to urge the Court to keep environmental policy decisions with the legislators and experts whom the law designates.

---

[1] No party's counsel authored this brief in whole or in part, and no one other than *amicus* contributed money intended to fund preparing or submitting the brief.

**INTRODUCTION**

The Biden-Harris Administration is in the midst of what it calls a "whole-of-government approach to addressing GHG [greenhouse gas] emissions." 88 Fed. Reg. 85,364, 85,369, 85,371 (Dec. 7, 2023). A key "goal" of this regulatory push is "that 50 percent of all new passenger cars and light trucks sold in 2030 be zero-emission vehicles," i.e., electric vehicles. Exec. Order No. 14,037, 86 Fed. Reg. 43,583, 43,583 (Aug. 10, 2021).

But the reference to the "whole-of-government" is a misnomer. It leaves out the part of the government that is responsible for establishing such goals: Congress. And Congress never authorized any agency to phase out the internal combustion engine. Yet in rule after rule, agencies throughout the executive branch have sought to accomplish this extra-statutory goal indirectly through a series of interlocking and mutually reinforcing actions. The "Greenhouse Gas Emissions Measure" Rule challenged here is one of the more farcical components of this regulatory bum-rush.

The Federal Highway Administration ("FHWA") is no one's idea of a climate regulator. It is responsible for helping States maintain and

improve the performance of their roads and bridges. No statute FHWA administers tells it to push States to decarbonize (or to pretend to decarbonize) the vehicles that travel on their roads. Yet in the challenged Rule, FHWA claims the authority to do just that. Its reasoning has four steps:

(1) It stretches the statutory term "performance" of the highways to mean "environmental performance" of the highways;

(2) It then stretches "environmental performance" of the highways to mean the environmental performance of the cars and trucks *on* the highways;

(3) The agency then defines down the environmental performance of these cars and trucks to a single metric: tailpipe carbon emissions; and finally

(4) FHWA orders States to make plans to reduce total tailpipe emissions and report to FHWA on their progress.

As the agency concedes, the supposed benefits of this statutory Rube Goldberg machine are completely speculative. As it explained in its proposed rule, the real goal is to push States to "align with the Administration's target of net-zero emissions, economy-wide, by 2050." 87 Fed. Reg. 42,401, 42,402 (July 15, 2022). And this, in turn, means meeting the Biden-Harris Administration's vehicle electrification goals, since "[a]chieving $CO_2$ reductions of this magnitude will depend on actions

such as increasing the adoption of zero emission [read: electric] vehicles." *Id.* at 42,411.

Here's the rub: States have only one real option. The Clean Air Act generally preempts States from imposing regulations even "relat[ed] to" tailpipe emissions. 42 U.S.C. § 7543(a). But it makes a narrow exception for EPA to grant a "waiver" of preemption to California (and only California) under certain circumstances. *Id.* § 7543(b). Other States may then "adopt and enforce" standards "identical to the California standards." *Id.* § 7507.

As it happens, California recently enacted a raft of new regulations that require just what FHWA says it wants: forcing many drivers to replace conventional vehicles with inferior electric alternatives and banning the sale of new conventional vehicles by 2036. *See* Cal. Code Regs. tit. 13, §§ 1962.2, 1962.4, 2014.1, 2015.1, 2015.2, 2016. California's rules are enormously costly, but—as EPA has maintained across both Republican and Democratic administrations—state electric vehicle mandates will "lea[d] to little to no change" in greenhouse-gas "emissions at a national level," and will thus "result in an indistinguishable change in global temperatures" and "likely no change in temperatures or physical

impacts resulting from anthropogenic climate change in California." 84 Fed. Reg. 51,310, 51,341, 51,353 (Sept. 27, 2019); *see also* 87 Fed. Reg. 14,332, 14,358 (Mar. 14, 2022) (leaving this finding undisturbed).

The Rule, in other words, is an elaborate and unwieldy scheme to pressure States to "increas[e] the adoption of" electric vehicles on their roadways, 87 Fed. Reg. at 42,411, by copying California's rules banning the internal combustion engine and forcing drivers to buy electric.

Of course, FHWA insists that it isn't forcing anyone to do anything more than some minimal planning and reporting. While the Rule may speak loudly about transforming the American way of life, the agency assures this Court that it carries only a small stick. Sure, States have to pledge to reduce carbon emissions from road users and report their "progress," but FHWA won't do anything to punish States that fail to meet their targets. 88 Fed. Reg. at 85,366.

This is disingenuous. As FHWA noted: the reporting and planning requirements are designed to "increase[ ] States' accountability …. As States collectively experience more public scrutiny … transportation leaders can be expected to increase their efforts to reduce $CO_2$." FHWA, Doc. ID No. FHWA-2021-0004-39830, Final Regulatory Impact Analysis

4

31 (Sept. 2023) ("RIA"). To be sure, FHWA says it doesn't know whether this will actually happen—maybe States won't be able to meet their own goals regardless, and maybe they won't ever intend to. But they still have to claim to try. *Cf. West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 (1943) (A "compulsory … pledge requires affirmation of a belief and an attitude of mind. It is not clear whether the regulation contemplates that pupils forego any contrary convictions of their own and become unwilling converts to the prescribed ceremony or whether it will be acceptable if they simulate assent by words without belief and by a gesture barren of meaning.").[2]

Neither Texas, nor the twenty-one other States that sued to challenge this Rule, *see Kentucky, et al v. FHWA et al*, No. 24-5532 (June 3, 2024), want to make the plans FHWA requires or report on their "progress," nor do they want to tell a lie. And the States are right. As two district courts have now held, the FHWA's scheme is unlawful; Congress did not delegate to FHWA the power to regulate—directly or indirectly—greenhouse gas emissions. *Texas v. U.S. Dep't of Transp.*, No. 5:23-cv-

---

[2] Also, lying to the federal government in order to get highway grant money would appear to violate the False Claims Act. *See Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1123 (9th Cir. 2007).

304, 2024 WL 1337375, at *19 (N.D. Tex. Mar. 27, 2024) (decision below); *Kentucky, et al v. FHWA, et al*, No. 5:23-cv-162, 2024 WL 1402443, at *10 (W.D. Ky. Apr. 1, 2024). Further, the Rule is arbitrary and capricious for the reasons Texas raised, and others too. Finally, the district court was correct that the appropriate remedy for this unlawful rule is vacatur.

This Court should affirm the district court's judgment.

## LEGAL BACKGROUND

The question presented is whether FHWA's authority to set "measures for States to use to assess—the performance of the National Highway System," 23 U.S.C. § 150(c)(3)(A)(ii)(V), allows it to require that States set annually declining GHG emissions targets for vehicles that travel on the National Highway System, and report "progress" on those goals to FHWA. *E.g.*, Appellees' Br., ECF. No. 33 at 19–40. Still, a few more details about this are necessary to understand fully its role in the "whole-of-government approach to addressing climate change." 88 Fed. Reg. at 85,378.

The "GHG measure" that States must report and by which FHWA will assess States' "progress toward the achievement of th[e] targets," *id.* at 85,364, is the tailpipe carbon-dioxide emissions "calculated by

multiplying [the] gallons of fuel [sold and] taxed by each State by the $CO_2$ emissions [factor] for each fuel type" and the percentage of vehicle miles traveled on the National Highway System in that State, *id.* at 85,386 (referencing Proposed Rule); 87 Fed. Reg. at 42,416 (Proposed Rule); *see* 23 C.F.R. § 490.511(c) (setting formula). The Rule is thus aimed at "tailpipe $CO_2$ emissions." 23 C.F.R. § 490.507(b).

Battery electric vehicles don't have tailpipes, of course. But that does not mean that driving them on the highway does not contribute to carbon emissions: charging electric vehicle batteries shifts considerable emissions upstream, to the power sector—which is still dominated by fossil fuel generation. By adopting a biased measure focused on tailpipe emissions, however, the Rule encourages States to set goals for decreasing gasoline and diesel use on highways and increasing electricity use. That reporting process thus drives toward a total replacement of gas and diesel vehicles with electric vehicles—which (not coincidentally) is what California's regulations require.

## ARGUMENT

Texas ably demonstrates that FHWA's claimed source of authority for the Rule, 23 U.S.C. § 150, does not authorize FHWA to require States

to set decreasing tailpipe emissions goals for on-road vehicles, *see* Appellee's Br., ECF. No. 33 at 19–40, and that the Rule has other flaws, *id.* at 40–50. CEA submits this *amicus* brief because there is more to be said about why the Rule implicates the major-questions doctrine and why the Rule is also arbitrary and capricious.

## I.    The Rule Decides a Major Question That Congress Has Not Delegated to Any Federal Agency, Including FHWA

The Rule implicates the major-questions doctrine not because it concerns the environment or attempts to address climate change, but because the precise power that the Rule asserts—power to drive a total replacement of conventional road vehicles with electric vehicles—decides an enormously consequential policy question that Congress has not assigned to FHWA, an agency with no expertise on this topic. Regulations of this kind instead require "clear congressional authorization" because courts must "presume that Congress intends to make major policy decisions itself, not leave those decisions to agencies." *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (quotation marks omitted). Two additional reasons reinforce that presumption in this case.

***First***, the implausibility of FHWA's claimed authority is underscored by the fact that Congress has authorized *other* agencies to regulate

vehicle emissions (EPA) and fuel economy (DOT). And those statutory regimes do not allow either agency to drive the electrification of the automobile fleet. Indeed, the Energy Policy and Conservation Act expressly prohibits DOT from even considering electric vehicles when setting nationwide average fuel economy standards. 49 U.S.C. § 32902(h). And the Supreme Court has noted that EPA's overlapping authority over vehicle emissions must "avoid inconsistency" with DOT's approach. *Massachusetts v. EPA*, 549 U.S. 497, 532 (2007).

To be sure, the Biden-Harris Administration takes a different view on these questions, which will ultimately have to be settled by other cases. *See Kentucky v. EPA*, No. 24-1087 (D.C. Cir.); *In re NHTSA, DOT, Corporate Average Fuel Economy Standards*, No. 24-7001 (6th Cir. July 18, 2024). But the point here is that the existence of these separate regulatory schemes weighs heavily against FHWA's attempt to find a power to reduce carbon emissions and improve fuel economy based on a statute that says nothing about either. The vehicle electrification elephant—if it exists at all—isn't hidden in any of the statutory mouseholes FHWA relies on here. "Congress, for better or for worse, has created a distinct

regulatory scheme" elsewhere. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000).

**Second**, the political significance of FHWA's Rule cannot reasonably be questioned now that the Senate has formally "disapprove[d]" it under the Congressional Review Act and expressed its desire that the "rule shall have no force or effect." 5 U.S.C. §§ 801–08. S.J. Res. 61, 118th Congress (Apr. 10, 2024).

*    *    *

Both of these points underscore Texas's argument that this is a major-questions case and that the vague term "performance of the National Highway System" does not empower FHWA to force States to set declining tailpipe carbon-dioxide emissions targets.

## II.   The Rule is Arbitrary and Capricious

The Rule would be invalid even if Congress had given FHWA the power it claims because the Rule is not the result of reasoned decisionmaking. "[A]gency action" must "be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An "agency must examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*

*Farm Mut. Auto. Ins. Co.*, <u>463 U.S. 29, 43</u> (1983). A rule is "arbitrary and capricious" and thus invalid under the Administrative Procedure Act, <u>5 U.S.C. § 706(2)(A)</u>, "if the agency has … entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, <u>463 U.S. at 43</u>. Here, assuming for the sake of argument that FHWA has power to regulate vehicle technology by forcing States to set declining emissions targets, the agency failed to consider important aspects of the problem that commenters raised, and the agency offered a justification for its approach that is too implausible to be ascribed to reasonable disagreement or expert insight.

## A.    FHWA Overlooked Important Aspects of the Problem

The Rule does not adequately address at least two important aspects of the problem.

***First***, FHWA failed to explain why it requires States to set declining *total* emissions targets despite important differences between the States. As commenters explained, declining total emissions targets do not make sense for a State with a growing population, or with growing truck

and freight traffic, or in more agricultural or mountainous States whose residents must drive further for necessities than those who live in dense, urban areas. *See* Comment of Boyden Gray & Associates PLLC 8–11 (Oct. 13, 2022), Doc. ID No. FHWA-2021-0004-39816; 88 Fed. Reg. at 85,377. The Rule's mandate of declining total emissions targets thus unreasonably skews in favor of States whose emissions are decreasing because they are losing drivers (e.g., California) and punishes States that are doing more to attract new residents, regardless of the actual performance of their transportation system. 88 Fed. Reg. at 85,377. In other words, it rewards the losers and punishes the winners.

FHWA acknowledged these concerns, but its response is nonsensical. It claims that "a measure that normalizes the effect of population or economic growth or excludes truck $CO_2$ emissions" would not "support[] tracking of progress toward GHG reduction goals." *Id.* But why not? It does not explain why, for example, the per capita measure that commenters suggested could not track progress on greenhouse gas reduction. *Id.* It certainly seems that it would, and FHWA never explains why it took the contrary position.

Nor is FHWA right that the unequal burden its Rule places on rural and growing States doesn't matter because States do not actually need to meet the goals that the Rule forces them to set and report on so long as those goals are "appropriate" and "declining." *See* 88 Fed. Reg. at 85,378–79. It is hardly "appropriate"—indeed, it's completely arbitrary—to require States to set "declining" targets that don't reflect reality and that many States may have no intention of meeting, especially considering that the States can already reap the Rule's purported emissions-monitoring benefits from data they already collect. *See* 88 Fed. Reg. at 85,377. The Rule's only effect, then—besides potentially subjecting state officials to False Claims Act liability for submitting false "goals" to secure federal funding—is to impose paperwork and compliance costs on States and municipalities. *See* RIA at 21 tbl.5. A Rule that imposes costs with no offsetting benefit is arbitrary. *See Michigan v. EPA*, 576 U.S. 743, 752 (2015) ("No regulation is 'appropriate' if it does significantly more harm than good.").

**Second**, FHWA admitted that it "fail[ed] to consider whether declining targets will … cause any potential harm through the adoption of electric vehicles." 88 Fed. Reg. at 85,375. Ignoring this was unreasonable.

As commenters pointed out, if the Rule contributes anything to the Biden-Harris Administration's "whole-of-government approach" to forcing a transition to electric vehicles, it will thereby increase wear on roadways and bridges and cause higher non-exhaust particulate emissions. This is because electric vehicles are, on average, 24% heavier than conventional ones. *See* Comment of Boyden Gray & Associates PLLC at 8–9.

Rather than agree that its foray into electric-vehicle promotion might detract from its primary responsibility of improving roads and bridges, FHWA says it is not responsible if the Rule causes state and local actors to adopt policies that increase electric-vehicle sales because "FHWA [only] expects—but does not require—that this measure will … [lead to] reduce[d] GHG emissions." 88 Fed. Reg. at 85,375.

FHWA can't have it both ways. If the Rule contributes to increased wear on roads without requiring it, then FHWA is at least partially responsible for that change—an aspect of the problem that FHWA concedes it ignores. If, on the other hand, FHWA is saying that its Rule really will not increase electrification of the vehicle fleet, then the Rule is, at best, a pointless cost. Either way, it's arbitrary.

### B. FHWA Offers No Plausible Explanation of How the Rule Will Improve the "Performance" of Federal Highways

Assuming for the sake of argument that the "performance" of highways includes the emissions from vehicles that travel on the highways, FHWA does not show that the Rule—which it promises is hortatory and informational—will plausibly result in any greenhouse gas emissions reductions, much less that these reductions will somehow avoid "climate impacts" on state highways and bridges.

FHWA asserts that its Rule "is a critical step in improving transportation system performance" by making it "more likely that [greenhouse-gas] emissions will be consistently and collaboratively considered by State[s] [and municipalities] through transportation planning and performance management." 88 Fed. Reg. at 85,379. It also argues that even a relatively small emissions reduction—"less than 0.01 percent of the average annual amount of $CO_2$ emissions from U.S. transportation sources in 2019"—would justify the Rule's costs. *Id.* at 85,389.

But the Regulatory Impact Analysis admits that there is no reason to believe the Rule's unenforceable goals will reduce emissions at all. Further, the U.S. Energy Information Administration ("EIA") predicts that,

even if greenhouse-gas emissions decline in the United States, "[w]orld $CO_2$ emissions are projected to increase," with the majority of the projected future growth taking place in developing countries. EIA, *Outlook for Future Emissions* (updated Oct. 27, 2023), https://tinyurl.com/3tmtjh8w.

As for FHWA's hope that the Rule will lead to "More Informed Decision-making" and "Greater Accountability" because the reporting requirements make voters more critical of $CO_2$ emissions and will eventually force local politicians to respond, it's just that—hope. RIA at 30–31. As the RIA concedes, "it is not possible to conclude with any degree of certainty whether and how the [greenhouse-gas] measure might cause state DOTs and MPOs to make transportation-investment and operations decisions that they otherwise would not have made." *Id.* at 6. FHWA apparently believes it will still save money eventually because the Rule will "better inform the future investment decisions of the Federal government." *Id.* at 3. But that is a very thin reed indeed. "By [this] logic, someone could decide whether it is 'appropriate' to buy a Ferrari without thinking about cost, because he plans to think about cost later when

deciding whether to upgrade the sound system." *Michigan*, 576 U.S. at 756. That is not reasoned decisionmaking.

## III. Vacatur is the Proper Remedy

The district court correctly recognized that 5 U.S.C. § 706(2)'s use of the phrase "set aside" instructs courts to vacate "*i.e.*, formally nullify and revoke—an unlawful agency action." *Texas v. United States Dep't of Transportation*, No. 5:23-CV-304-H, 2024 WL 1337375, at *19 (N.D. Tex. Mar. 27, 2024) (quoting *Data Mktg. P'ship v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022)); *see also* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020); Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1012–13 (2018). FHWA has identified no reason to depart from that "default rule" of Administrative Procedure Act ("APA") remedies. *Id.*

FHWA argues that "equitable and constitutional principles" disfavor vacatur, ECF No. 22-1, Page 62, but the agency is mistaken on both fronts. Remedies under the APA are legal, not equitable, remedies created by Congress, not courts. FHWA is correct that judges' discretion to craft equitable remedies is closely conscribed by traditional limits on judicial discretion to bind nonparties. *See Id.* at 62–63. But the same

limits—necessary as they are to prevent judicial aggrandizement—do not apply when the legislature has expressly authorized a remedy's scope by statute, as Congress did in § 706 of the APA. *See* T. Elliot Gaiser, Mathura Sridharan, and Nicholas A. Cordova, *The Truth of Erasure: Universal Remedies for Universal Agency Actions*, U. Chi. L. Rev. Online (Aug. 28, 2024), at *11. That is because Congress, having the power to bind and loose the public at large, is the proper institutional actor to decide how far judicial remedies can reach before those remedies exceed the judicial power that Article III confers on federal courts and become quasi-legislative. *Id.*

Constitutional history confirms common sense here. Just as Parliament possessed sweeping power to create new causes of action by statute, while traditional restraint hardened into absolute limits on how far the King's appointed Chancellor—the possessor of equitable powers—could go in constructing extra-legal remedies, so now Congress wields broad power to legislate nationwide remedies just as it may enact nationwide statutes, while the federal judiciary's equitable powers to issue injunctions remain subject to the limits of their trans-Atlantic predecessor to prevent them from trespassing on legislative turf. *Id.* FHWA's attempt

to apply traditional and constitutional limits on the judge-defined, equitable remedy of injunctions to the Congress-defined, legal remedy of vacatur is therefore a category error. The district court avoided that error, and this Court should too.

## CONCLUSION

The Court should affirm the district court's judgment.

Dated: November 9, 2024                    Respectfully submitted,

/s/ Michael Buschbacher
Michael Buschbacher
  *Counsel of Record*
James R. Conde
Nicholas A. Cordova
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202-955-0620
mbuschbacher@boydengray.com

*Counsel for Amicus Curiae Center for Environmental Accountability*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the under-signed certifies that this brief:

(i)    complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a)(5) because it contains 3,689 words; and

(ii)    complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook.

Dated: November 9, 2024          /s/ Michael Buschbacher
                                 Michael Buschbacher

# CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I further certify that all parties in this case are represented by counsel who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 9, 2024          /s/ Michael Buschbacher
                                 Michael Buschbacher